**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

TANA S.,

                              Plaintiff,

          v.                                          1:17-CV-0414
                                                      (CFH)
NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

                              Defendant.

_____

APPEARANCES:                          OF COUNSEL:

Law Office of Lewis B. Insler         LEWIS B. INSLER, ESQ.
  Counsel for Plaintiff
17 Newcomb Place
White Plains, New York 10606

U.S. Social Security Admin., Office of   ARIELLA R. ZOLTAN, ESQ.
Regional General Counsel, Region II
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, New York 10278

**CHRISTIAN F. HUMMEL,**
**United States Magistrate Judge**

## <u>MEMORANDUM-DECISION & ORDER</u>

Currently before the Court, in this Social Security action filed by Tana S.

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion

for judgment on the pleadings and Defendant's motion for judgment on the pleadings.

(Dkt. Nos. 7, 8.)  For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

# I. BACKGROUND

## A. Facts

Plaintiff was born in 1980, making her 30 years old at the alleged onset date and 34 years old at the date of the ALJ's decision.  Plaintiff reported graduating from college.  Plaintiff has past work as a banquet waitress and banquet stewardess (as classified by the vocational expert ("VE") at the administrative hearing).  At the initial level, Plaintiff alleged disability due to anxiety and multiple sclerosis ("MS") with fatigue, pain, and memory loss.

## B. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits and Supplemental Security Income on October 26, 2012, alleging disability beginning September 25, 2010.  Plaintiff's application was initially denied on April 15, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ Michael J. Stacchini on March 27, 2014.  On May 19, 2014, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 8-27.)[1]  On March 1, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-7.)

---

[1] The Administrative Transcript is found at Dkt. No. 6.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

## C. The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 13-22.) First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act through September 30, 2011. (T. 13.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 25, 2010, the alleged onset date. (*Id*.) Third, the ALJ found that Plaintiff's MS, anxiety, depression, asthma, degenerative disc disease ("DDD") of the lumbar spine, and chronic pain syndrome are severe impairments. (*Id*.) Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 14-15.) Specifically, the ALJ considered Listing 1.04 (disorders of the spine), Listing 11.09 (multiple sclerosis), Listing 12.02 (organic mental disorders), Listing 12.04 (affective disorders), Listing 12.06 (anxiety related disorders), Listing 3.02A (chronic obstructive pulmonary disease), and Listing 3.03 (asthma). (*Id*.) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work except she can

> occasionally climb ramps or stairs. She should not climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. Further, she should have no exposure to extreme heat or concentrated exposure to atmospheric condition as defined by the [D]ictionary of [O]ccupational [T]itles. The claimant should not be exposed to unprotected heights or moving mechanical parts. She is limited to simple, routine tasks such as those demanded of SVP 2 jobs or less.

(T. 15-16.)  Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work.  (T. 20.)  Seventh, and last, the ALJ found that Plaintiff is capable of performing other jobs existing in significant numbers in the national economy.  (T. 20-21.)  The ALJ therefore concluded that Plaintiff is not disabled.

### D. Arguments

### 1. Plaintiff's Arguments

Plaintiff makes two main arguments in support of her motion for judgment on the pleadings.  (Dkt. No. 7-1, at 9-19 [Pl.'s Mem. of Law].)  First, Plaintiff argues generally that the ALJ's RFC is incomplete because it fails to incorporate limitations based on Plaintiff's fatigue or account for the finding that she has a moderate limitation in the ability to sustain concentration, persistence or pace.  (*Id*. at 9, 11-19.)  Plaintiff also argues that the RFC lacks specificity because the percentage of time Plaintiff would be off-task or whether she can maintain attention for two-hour segments is unknown.  (*Id*. at 18.)  Plaintiff argues that medical sources did not "quantify" this limitation and that the RFC is incomplete unless her "'moderate' limitation in concentration, persistence, or pace is quantified in terms of frequency and duration and the severity is placed in a functional context."  (*Id*.)

More specifically, Plaintiff argues that the RFC never takes into account her fatigue – noted as a limiting factor by treating physicians Elena Kaznatcheeva, M.D., and David Jaeger, M.D. – or the extreme limitations in task performance and the ability to maintain a schedule opined by consultative examiner Alan Dubro, Ph.D., and, to a somewhat lesser extent, by non-examining consultant Dr. Dambrocia.  (*Id*. at 11, 17.)  Plaintiff also states that the ALJ's decision shows either a lack of understanding of her

medical conditions or a deliberate attempt to downplay their severity and a failure to objectively evaluate the claim before him.  (*Id*.)

Plaintiff also appears to argue that the ALJ improperly afforded more weight to the opinion of non-examining consultant Dr. Dambrocia than to the opinion of consultative examiner Dr. Dubro.  (*Id*. at 12-13.)  Plaintiff notes that a psychological examination will always be based on subjective complaints unless there has been organic damage to the brain and argues that the Second Circuit has decried reliance on a non-examining reviewing physician's opinion over that of an examining source.  (*Id*.)  Plaintiff also argues that the ALJ misstated her testimony in finding her daily household and exercise activities were inconsistent with her complaints.  (*Id*. at 12.)

Second, Plaintiff argues that the VE's testimony does not constitute substantial evidence to support the ALJ's Step Five determination because the testimony was elicited in response to an incomplete hypothetical question that did not take into account Plaintiff's limitations related to fatigue or deficits in concentration, persistence, or pace.  (*Id*. at 16-19.)  Plaintiff also argues that the ALJ and Plaintiff's counsel at the administrative hearing did not attempt to quantify Plaintiff's fatigue in terms of time off-task or obtain testimony from the VE as to the least amount of time off-task that would still preclude all work to determine how this or a similar limitation would apply in this matter.  (*Id*.)

## 2. Defendant's Arguments

Generally, Defendant makes three main arguments in support of her motion for judgment on the pleadings.  (Dkt. No. 8, at 4-15 [Def.'s Mem. of Law].)  First, Defendant

argues that the ALJ properly assessed Plaintiff's mental RFC (assessing Plaintiff's mental symptoms and limitations at each stage of the sequential analysis) and accounted for limitations in concentration, persistence, and pace.  (*Id*. at 7-13.) Second, Defendant argues that the ALJ did not overlook Plaintiff's fatigue.  (*Id*. at 13.) Specifically, Defendant argues that the ALJ discussed Plaintiff's complaints of fatigue throughout his decision and concluded that her claims of disabling fatigue were undermined by the evidence of record, and were not fully credible.  (*Id*.)  Defendant also notes that, nevertheless, the ALJ limited Plaintiff to sedentary work to accommodate her testimony that she was unable to perform work (such as her previous job as a waitress) due to fatigue.  (*Id*.) Third, Defendant argues that the ALJ was permitted to rely on VE testimony because the testimony was based on the ALJ's RFC assessment, which was supported by substantial evidence in the record.  (*Id*. at 13-15.) Specifically, Defendant argues that the ALJ properly relied on the VE testimony (which was in response to a hypothetical question premised on the ALJ's well-supported RFC determination) to conclude that jobs existed in significant numbers in the national economy that Plaintiff could perform.  (*Id*. at 13-14.)  Defendant argues that a finding of a moderate limitation in maintaining concentration, persistence, and pace is not inconsistent with an RFC for unskilled work.  (*Id*. at 14.)

Defendant also argues that substantial evidence in the record demonstrates that Plaintiff was able to engage in simple and routine tasks notwithstanding her limitations in concentration, persistence, or pace.  (*Id*. at 15.)  Finally, Defendant argues that, even if the ALJ erred in his failure to explicitly reference Plaintiff's moderate limitation in maintaining concentration, persistence, and pace in his hypothetical question to the VE,

any such error was harmless as substantial evidence supports the RFC for unskilled work.  (*Id.*)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Sequential Evaluation

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him

disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

### A. Whether the RFC is Supported by Substantial Evidence

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to

9

demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012), *Report and Recommendation adopted by* 2013 WL 1180864 (Mar. 20, 2013) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. *See also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); *see also* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not

replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

### i.     *The Medical Opinions of Record and the ALJ's Analysis*

In February 2013, Dr. Dubro conducted a psychiatric consultative examination and noted that, although Plaintiff appeared to be stressed and fearful frequently during the exam, her speech was fluent and clear and her language skills were adequately developed.  (T. 594-99.)  On examination, Plaintiff had a coherent and goal directed thought process, constricted affect, and an anxious and occasionally depressed mood.  (T. 596.)  Her attention and concentration and recent and remote memory skills were impaired secondary to distractibility associated with anxiety.  (T. 596-97.)  Dr. Dubro diagnosed generalized anxiety disorder, cognitive disorder secondary to MS, and depressive disorder NOS and opined the following:

> The claimant can understand directions and instructions.  The claimant does display moderate difficulty in her ability to attend, remember, and follow directions and instructions.  The claimant's attention span and concentration are markedly impaired.  The claimant is seen as an individual who would experience marked difficulty both in her ability to perform daily tasks independently and on a regular basis and in her ability to perform complex tasks independently and on a regular basis.  The claimant does display moderate difficulty in her ability to interact with others.  She does display marked difficulty in her ability to make day-to-day decisions.  The claimant is seen as an individual who would display marked difficulty in her ability to regularly attend to a routine and maintain a schedule.  The results of the exam are consistent with psychiatric problems, which significantly interfere with the claimant's ability to function on a daily basis.

(T. 597-98.)  The ALJ afforded little weight to Dr. Dubro's opinion "because it is inconsistent with the medical evidence of record as a whole."  (T. 18.)  The ALJ further indicated that Dr. Dubro was not Plaintiff's treating physician and only met her one time, therefore, there was no longitudinal history or patient/doctor relationship established in order to opine such findings.  (T. 18-19.)  The ALJ also stated that Dr. Dubro "based his opinion on subjective complaints not objective medical findings."  (T. 19.)

In February 2013, consultative examiner Kautilya Puri, M.D., conducted a neurological examination and observed that Plaintiff had normal gait and station, could walk on her heels and toes without difficulty, used no assistive device, had mild difficulty tandem walking, did not need help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty.  (T. 600-03.)  Dr. Puri noted the following: there was no evidence of recent or remote memory impairment and no suggestion of impairment in insight or judgment; Plaintiff had an appropriate mood and affect, intact hand and finger dexterity, full grip strength bilaterally, and full strength in the upper and lower extremities; she had no muscle atrophy; and her sensory exam was normal.  (T. 602-03.)  Dr. Puri diagnosed MS and asthma and opined that Plaintiff did not have any objective limitations to communication, fine motor, or gross motor activities and that she had no objective limitations to her gait or to activities of daily living on examination.  (T. 603.)  Dr. Puri recommended that Plaintiff avoid warm environments secondary to her history.  (*Id*.)  The ALJ afforded great weight to Dr. Puri's opinion "because it was based on objective findings and it was consistent with the claimant's activities of daily living."  (T. 19.)

In March 2013, Plaintiff underwent a psychological evaluation conducted by Kalpana Doraiswamy, Psy.D., who observed that Plaintiff was extremely anxious, which interfered with her optimal functioning. (T. 604-09.) Plaintiff also appeared sad-looking, but was attentive and fully communicative; she had intact associations, logical thinking, appropriate thought content, intact and age appropriate cognitive functioning and fund of knowledge, and intact short and long term memory, ability to abstract, and ability to do arithmetic calculations. (T. 607.) Test findings showed Plaintiff had a high average full scale IQ and superior general cognitive ability. (*Id.*) Dr. Doraiswamy noted significant discrepancies between Plaintiff's verbal and non-verbal abilities, which generally suggested an organic lesion and/or emotional factors. (*Id.*) Plaintiff's attention and concentration were within the average range and her ability to process visual information was below average. (*Id.*) She obtained average scores on executive functioning testing (the abilities to direct and sustain attention in response to task and situational demands, plan out effectively, think in an organized way, and problem solve). (T. 608.) Testing also suggested bilateral motor deficits and moderate depression. (*Id.*)

Dr. Doraiswamy diagnosed MS and mood disorder due to medical condition, and indicated that Plaintiff's patchy cognitive and bilateral fine motor deficits could be due to an organic brain lesion superimposed by her emotional issues. (T. 608-09.) Dr. Doraiswamy recommended that Plaintiff continue with neurological consultations and enroll in psychotherapy services to enhance her coping skills due to her medical condition. (T. 609.) The ALJ afforded Dr. Doraiswamy's opinion some weight "because

it is consistent with the record as a whole that repeatedly showed normal mental status examination results," but noted that Plaintiff's "demonstration of motor deficits are subjective in nature and not consistent with objective findings that showed she was able to manipulate and ambulate normally." (T. 19.)

As part of the initial determination in April 2013, non-examining consultant Dr. Dambrocia opined that Plaintiff had mild restriction of activities of daily living and moderate difficulties in maintaining social functioning and concentration, persistence or pace, and that she experienced no repeated episodes of decompensation of extended duration. (T. 86). More specifically, Dr. Dambrocia opined that Plaintiff was moderately limited in the abilities to understand, remember and carry out detailed instructions and maintain attention and concentration for extended periods, but that she was not significantly limited in the abilities to carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, or complete a normal workday and workweek. (T. 89-90.) Dr. Dambrocia also opined that, based on psychiatric/cognitive limitations, Plaintiff was able to understand and remember instructions, sustain attention and concentration for tasks, relate adequately with others, and adapt to changes. (T. 92.) The ALJ afforded great weight to Dr. Dambrocia's opinion "because it is consistent with the medical evidence of record as a whole and her mental status examinations that appear to be within normal limits over a longitudinal period." (T. 18.)

ii.    ***The Court's Analysis***

Here, the ALJ found that Plaintiff has the RFC to perform a modified range of sedentary work with a limitation to simple, routine tasks such as those demanded of SVP 2 jobs or less.  (T. 16.)  Plaintiff makes several arguments asserting that the ALJ's RFC is not supported by substantial evidence because it does not account for limitations based on Plaintiff's fatigue and the moderate limitation in her ability to sustain concentration, persistence, or pace opined by Dr. Dambrocia.  (Dkt. No. 7-1, at 9-19 [Pl.'s Mem. of Law].)

Specifically, Plaintiff argues that (1) the RFC does not account for Plaintiff's fatigue (which was noted as a limiting factor by Drs. Kaznatcheeva and Jaeger); (2) the RFC does not account for the extreme limitations in task performance and the ability to maintain a schedule indicated by consultative examiner Dr. Dubro and non-examining consultant Dr. Dambrocia; (3) the RFC does not properly account for Plaintiff's fatigue and limitation in concentration, persistence, or pace in accordance with *McIntyre v. Colvin*, 758 F.3d 146 (2d Cir. 2014), because Plaintiff's limitations relating to concentration, persistence or pace must be properly quantified and a limitation to simple, unskilled work does not implicitly account for a moderate limitation in concentration, persistence or pace; (4) *McIntyre* is distinguishable from this case because its plain language states that the limitation in concentration, persistence, or pace must be otherwise accounted for in the RFC and the ALJ has not done so here; and (5) the RFC fails to include significant factors, including the ability to maintain attention and concentration for two-hour segments and the ability to perform at a consistent pace, as required by POMS DI25020.010(B)(2)(a) and (B)(3)(i).  (*Id.*)

Plaintiff also appears to argue that it was improper for the ALJ to afford more weight to the opinion of non-examining consultant, Dr. Dambrocia, than to the opinion of consultative examine,r Dr. Dubro.  (*Id*. at 12-13.)  The Court finds Plaintiff's arguments unpersuasive for the following four reasons.

First, substantial evidence supports the ALJ's consideration of Plaintiff's fatigue. The ALJ's decision indicates that he adequately considered Plaintiff's fatigue when assessing her RFC.  (T. 16-20.)  The ALJ noted that Plaintiff left her last job as a waitress and hostess due to fatigue and that Plaintiff reported her medication helped a little, but she still suffered from chronic fatigue.  (T. 16.)  The ALJ summarized the medical records, noting Plaintiff's subjective reports of fatigue, and cited treatment notes indicating that Plaintiff's general condition was stable and her medications were effective in treating her MS symptoms.  (T. 16-18.)  However, the ALJ found that the objective findings in this case failed to provide strong support for Plaintiff's allegations of disabling symptoms and limitations.  (T. 16, 19-20.)

Plaintiff provides no record citations for her contention that Dr. Kaznatcheeva noted fatigue as a limiting factor at multiple visits, but indicates that fatigue was noted as a limiting factor by Dr. Jaeger.  (Dkt. No. 7-1, at 11 [Pl.'s Mem. of Law]; T. 543.)  It is true that, at a December 7, 2012 office visit, Dr. Jaeger indicated that Plaintiff's capabilities "may be limited by her episodic subjective weakness, her gait issues which come and go, and of course fatigue in a patient with [MS]."  (T. 543.)  However, Dr. Jaeger also recommended a proper functional capacity evaluation because Plaintiff's neurological examinations prior to that visit "did not highlight any disabling physical

issue obvious on examination aside from her fatigue, though with [MS], they may not always be obvious." (*Id*.)

Further, the Court's review of the record indicates that, although Plaintiff frequently reported fatigue to Dr. Kaznatcheeva following her diagnosis of MS in 2010, there is a basis for the ALJ's conclusion that the objective findings failed to provide strong support for Plaintiff's allegations of disabling symptoms and limitations. (T. 16, 356-58, 362-64, 367-69, 370-72, 376-78.).) For example, at a September 2011 office visit, Plaintiff reported having more and more symptoms of tiredness/fatigue, but was noted as tolerating Rebif (her MS medication) three times per week quite well and she had no MS relapses during the previous year. (T. 362-64.) Indeed, Dr. Kaznatcheeva noted Plaintiff's generalized fatigue and that Plaintiff "feels that she could not work. She asks for handicap permission which we do not recommend to the patient. I encouraged her to be physically as active as possible to proceed with her life without changes." (T. 364.)

Contrary to Plaintiff's argument distinguishing this case from *McIntyre*, the Court's review of the record and the ALJ's decision indicates that substantial evidence demonstrates that Plaintiff can engage in "simple, routine tasks such as those demanded of SVP 2 jobs or less" notwithstanding her physical impairments including fatigue and her moderate limitation in concentration, persistence, and pace. *McIntyre*, 758 F.3d at 152. As in *McIntyre*, the ALJ explicitly limited the hypothetical question posed to the VE to such simple, routine tasks after fully explaining Plaintiff's physical restrictions, and, therefore, sufficiently accounted for the combined effect of her

17

impairments.  *Id.* (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995)).

Because the ALJ explicitly referenced Plaintiff's alleged fatigue in his decision and

clearly reviewed the treatment notes of record (which include Plaintiff's reports of

fatigue), the Court finds that the ALJ adequately considered Plaintiff's alleged fatigue

when assessing her RFC and finding that the objective findings failed to provide strong

support for Plaintiff's allegations of disabling symptoms and limitations.  The Court

therefore finds that any error by the ALJ to explicitly reference Plaintiff's moderate

limitation in maintaining concentration, persistence, or pace (as it relates to Plaintiff's

fatigue) in his hypothetical to the VE is harmless because substantial evidence supports

the ALJ's RFC.  *McIntyre*, 758 F.3d at 152.

Second, substantial evidence supports the ALJ's assessment of the opinion

evidence.  In assessing a claimant's RFC, an ALJ is entitled to rely on opinions from

both examining and non-examining State agency medical consultants because these

consultants are qualified experts in the field of social security disability.  20 C.F.R. §§

404.1512(b)(1)(vi), 404.1513(c), 404.1527(e); *see also Frey*, 485 F. App'x at 487; *Little*,

2015 WL 1399586, at *9.  Here, the ALJ afforded great weight to Dr. Dambrocia's

opinion regarding Plaintiff's mental limitations and little weight to Dr. Dubro's opinion,

explaining that Dr. Dambrocia's opinion was consistent with the medical evidence of

record while Dr. Dubro's was based on Plaintiff's subjective complaints.  (T. 18-19.)

The ALJ also stated that Dr. Dubro did not have a longitudinal treatment relationship

with Plaintiff to substantiate the level of his opined limitations.  (*Id.*) The ALJ's decision

provides an adequate analysis of both the medical evidence and the opinion evidence.

(T. 16-20.)  The ALJ also provides sufficient reasons for the weight afforded to the

various opinions of record.  (T. 18-19.)  Further, "[t]here is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations."  *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) (summary order).  Therefore, the Court finds that it was reasonable and within the ALJ's purview to afford more weight to a non-examining opinion than an examining opinion, especially where he found the examining opinion to be inconsistent with the evidence of record.

Third, substantial evidence supports the ALJ's assessment of Plaintiff's limitation in concentration, persistence, or pace and his RFC limitation to simple, routine tasks such as those required in SVP 2 jobs or less.  When considering Plaintiff's mental impairments, the ALJ found that Plaintiff has moderate difficulties in concentration, persistence, or pace.  (T. 15.)  In making this finding, the ALJ noted that

> the claimant reported that she was able to handle money and read but had issues with concentration due to her pain.  Dr. Dambrocia concluded that the claimant has moderate limitations in this area (Ex. 4A).  The undersigned finds that this is consistent with the record as a whole, which indicates that the claimant has moderate limitations in sustaining focus, attention, and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings.

(*Id*.)  The ALJ's decision indicates he adequately considered Plaintiff's mental limitations and the medical evidence of record.  (T. 14-20.)  Plaintiff has not effectively argued how the ALJ's RFC limitation to "simple, routine tasks such as those demanded of SVP jobs or less" fails to properly account for her mental limitations.

As discussed above, the ALJ was entitled to rely on Dr. Dambrocia's opinion in assessing the mental limitations to be included in Plaintiff's RFC and provided sufficient

19

reasons for discounting the more extensive limitations Dr. Dubro opined. (T. 18-19.) Again, it is the ALJ's responsibility to weigh the evidence and resolve material conflicts therein; the ALJ reasonably relied on Dr. Dambrocia's opinion, which indicated moderate limitations in concentration, persistence, or pace as well as the ability to understand and remember instructions, sustain attention and concentration for tasks, relate adequately with others, and adapt to changes. (T. 86, 92.) *See Bliss v. Colvin*, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014) (same). Dr. Dambrocia found that, despite these limitations, Plaintiff retained adequate overall cognitive functioning, indicating the ability to perform unskilled work. (T. 86, 89-92.) This opinion supports the ALJ's finding that Plaintiff remained capable of performing unskilled work despite moderate limitations in concentration, persistence or pace.

Fourth, as Defendant argues, substantial evidence in the record demonstrates that Plaintiff is able to engage in simple, routine tasks notwithstanding her limitations in concentration, persistence, or pace as found by the ALJ. (Dkt. No. 8, at 14-15 [Def.'s Mem. of Law].) The ALJ properly reviewed the medical and opinion evidence of record and resolved the conflicts therein, supporting his analysis with sufficient and reasonable explanation. Again, the Court therefore finds that any error by the ALJ to explicitly reference Plaintiff's moderate limitation in maintaining concentration, persistence, or pace in his hypothetical to the VE is harmless because substantial evidence supports the ALJ's RFC.

For the reasons above, the Court finds that the RFC determination is supported by substantial evidence and remand is not required on this basis.

## C. Whether the ALJ's Credibility Determination is Supported by Substantial Evidence

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).

Plaintiff's argument that the ALJ misstated her testimony in finding her daily household and exercise activities to be inconsistent with her complaints appears to imply that the ALJ's credibility determination is not supported. (Dkt. No. 7-1, at 12 [Pl.'s Mem. of Law].) The Court finds this argument unpersuasive for the following two reasons. First, the Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*,

21

11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Second, when considering Plaintiff's RFC and credibility, the ALJ summarized Plaintiff's testimony and the medical and opinion evidence of record in accordance with the requirements of 20 C.F.R. §§ 404.1527, 404.1529, 416.927, and 416.929 and Social Security Rulings 96-2p, 96-4p, 96-5p, 96-6p, 96-7p (superseded by SSR 16-3p), and 06-3p. (T. 16-20.) The ALJ indicated that the objective medical evidence failed to corroborate the severity of Plaintiff's allegations and that her activities of daily living were not consistent with her complaints and noted several inconsistencies between the record and Plaintiff's allegations. (T. 16.) For example, the ALJ indicated that, during the period of alleged disability around the time of her date last insured, Plaintiff was exercising by dancing and swimming and that she testified that her medication for her mental impairment helped to control her symptoms. (T. 16-20.) Plaintiff testified at the administrative hearing that she was swimming and dancing in 2010, but had to stop by 2011 because of issues with overheating. (T. 55.) The ALJ's decision does not indicate a misstatement of this testimony; rather, it indicates that the ALJ specifically noted both that she was exercising by dancing and swimming "during the period of alleged disability around the time of her date last insured" and that Plaintiff reported at the hearing that she had to stop dancing due to her symptoms. (T. 16, 19.)

The ALJ also stated that several examination and treatment notes showed that Plaintiff's condition was largely stable, without side effects from medication. (T. 19, 851.) The ALJ noted that Plaintiff reported that her medication for the burning sensation in her leg helped and she was no longer experiencing those symptoms. (T. 19-20.) The ALJ indicated that the medical evidence of record showed that Plaintiff received refills of her medications over a longitudinal period and indicated that they were helping her symptoms. (T. 20, 350-527.) The ALJ also noted that Plaintiff appeared to have a normal gait with brisk reflexes, and her mental status examinations were normal, which was inconsistent with her allegations. (T. 20, 358.) The ALJ additionally stated that a review of Plaintiff's work history showed that she worked only sporadically prior to the alleged disability onset date, raising the question as to whether her continuing unemployment was actually due to medical impairments. (T. 20, 186-91.)

Because the ALJ adequately summarized the requisite factors and provided multiple sufficient reasons for his credibility determination, the Court finds that his credibility determination is supported by substantial evidence. Remand is therefore not required on this basis.

### D. **Whether the ALJ's Step Five Determination is Supported by Substantial Evidence**

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre*, 758 F.3d

at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved."  *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)).  If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability."  *Pardee*, 631 F. Supp. 2d at 211 (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

Here, the ALJ found that Plaintiff can perform other jobs existing in significant numbers in the national economy, including charge clerk, waxer, and order clerk.  (T. 20-21.)  Plaintiff argues that the VE testimony is not substantial evidence to support the Step Five finding because the testimony was elicited in response to an incomplete hypothetical question or a hypothetical question based on the ALJ's incomplete RFC. (Dkt. No. 7-1, at 16-19 [Pl.'s Mem. of Law].)  The Court finds this argument unpersuasive.  As discussed above in Sections III.A. and III.B. of this Decision and Order, the ALJ's analysis of Plaintiff's limitations and the resulting RFC and credibility determinations are supported by substantial evidence.  Therefore, the hypothetical question based on those findings was complete and supported by substantial evidence. Remand is therefore not required on this basis.

## IV.  Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 8) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

**IT IS SO ORDERED**.

Dated: August 22, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge